# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cr-10018-JES-JEH |
| | ) |
| JASMINE BRADLEY, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION

Defendant Jasmine Bradley has filed a Motion seeking dismissal with prejudice of her case for violation of 18 U.S.C. § 4241(d). Doc. 33. She alleges that her due process rights were violated because she remained in the custody of the BOP for longer than four months without any finding by the Court that an additional reasonable time was necessary. The United States has filed a Response and Defendant filed a Reply. Docs. 40; 45.

### BACKGROUND

The facts are not in dispute. Ms. Bradley was arrested on June 12, 2020 and released with conditions on July 27, 2020. On Jan 14, 2022, she filed an unopposed motion for competency pursuant to 18 U.S.C. § 4241. An evaluation in November 2021 found her incompetent to assist in her own defense. Therefore, on January 18, 2022, the Court found she was not competent and remanded her to the custody of the Attorney General pursuant to § 4241(d)(1). On January 28, 2022, she self-reported to the United States Marshal.

On March 7, 2022, the BOP notified Magistrate Hawley, by letter, that Ms. Bradley had arrived at FMC Carswell on that date and her evaluation would be completed by July 5, 2022, with a written report within four weeks following July 5, 2022. On July 18, 2022, upon Defendant's motion, the Court held a status hearing. At the hearing, the Government indicated

the BOP completed their examination and the report opining her competency to stand trial was expected by August 3, 2022.

On July 27, 2022, the BOP reported to Magistrate Hawley that Ms. Bradley had undergone a period of evaluation and treatment at FMC Carswell, but their staff would not be able to complete the report by Aug 2, 2022, due to an increase in forensic health examinations and no longer having a full complement of forensic psychologists. They requested an extension of four weeks to complete Ms. Bradley's report by August 30, 2022.

On August 15, 2022, Defendant filed the instant motion seeking dismissal. She was returned home on August 24, 2022, for a total stay in custody of almost seventh months from when she reported to the Marshal on January 28, 2022. Following the Parties' briefing on this Motion, a forensic evaluation was submitted to the Court on August 30, 2022, finding Defendant currently competent to stand trial. On September 28, 2022, the Parties orally argued their respective positions on the Motion to dismiss before the undersigned and the Court made a finding of competency.

## DISCUSSION

The purpose of 18 U.S.C. § 4241(d) in the Insanity Defense Reform Act ("IDRA") is to allow the government time to determine whether a defendant can be restored to competency and to protect a defendant's due process rights. It deals with restoring competency to stand trial once a finding has already been made that the defendant is incompetent and the Court has committed the defendant to the custody of the Attorney General. The only issue before the Court is how § 4241(d) is to be interpreted. More specifically, the additional reasonable period of time until (A) his mental condition is so improved that trial may proceed, if the Court finds that there is a

substantial probability that within such additional period of time, he will attain the capacity to permit the trial to proceed.

Many cases are cited by both Parties in support of their positions, but no case calls for dismissal of the indictment under circumstance similar to the one here. Defendant argues that the United States has waived any argument in relation to when the four-month period started for § 4241 purposes because they chose to stay silent on the issue and incorrectly focused on the provision of 18 U.S.C. § 4247(b), which deals with pre-competency evaluations. The Court need not address this argument because both Parties acknowledge there is no Seventh Circuit precedent for dismissal under either provision. Therefore, the Court will start with the due process argument made by the Defendant who cites *Jackson v. Indiana*, 406 U.S. 715 (1972) in support.

*Jackson* did not hold either way as to the remedy of dismissal being proper or not but said the Indiana state courts should address the issue under Indiana's state law holding someone for an indeterminate length of time. *Jackson*, 406 U.S. at 740. *Jackson* held that Indiana's indeterminate commitment of a criminal defendant solely on account of his lack of capacity to stand trial violates due process. The Court went on to say that a defendant cannot be held more than a reasonable period of time necessary to determine whether there is a substantial probability that he will attain competency in the foreseeable future. If competency cannot be restored, then the State must either institute a civil commitment proceeding or release the defendant. *Id.* at 738. The Court then remanded to the Indiana state court for determination on other issues.

With *Jackson* in mind, the Court sympathizes with defendants' frustrations at the length of time the BOP takes to complete examinations. But the Court also recognizes that every situation is unique with respect to how long it may take to fully examine an individual and

preserving the constitutional right that an individual must be competent to stand trial is important. The Court disagrees with Defendant's interpretation that she was being held indefinitely like in *Jackson*. Rather, the original four-month period turned into about five and half months, not the three-and-a-half-year commitment period in *Jackson* with an indefinite end date. Throughout her hospitalization, timeframes were communicated, and specific extensions requested. This does not foreclose the possibility that a period of time could effectively be considered indefinite where the government has been radio silent for a number of months on the status of an individual while the defendant continues to press the issue of their confinement beyond the statutorily authorized period. But that was not the case here. Moreover, *Jackson* does not support the remedy of dismissal requested. Rather, the Court spoke of potential remedies when competency has not been restored without a substantial probability that it could be in the foreseeable future. In this case, Ms. Bradley's competency was, at some point, restored.

Statutory interpretation on 18 U.S.C. § 4241(d) beyond the mandatory commitment provision is sparse. In *United States v. Shawar*, 865 F.2d 856 (1989), the Seventh Circuit addressed the issue of a judge's discretion to commit a defendant to the custody of the Attorney General once a defendant has been found incompetent to stand trial. The court held that § 4241(d) gave a district judge no discretion in whether to commit. The court held that commitment was mandatory, and the likelihood of recovery was not something a district judge could consider in deciding whether to commit the defendant for evaluation period. Rather, "once a defendant is found incompetent, the Government is entitled to an in-depth evaluation of him, in order to determine whether he is likely to recover." *Shawar*, 865 F.2d at 861.

The Court first starts with defining the date of commitment under § 4241(d). The Court finds the language that "the Attorney General *shall hospitalize* the defendant for treatment in a

4

suitable facility" to mean upon arrival (assuming that arrival was within a reasonable time) at the BOP facility suitable for treatment because it follows the sentence "the court shall commit the defendant to the *custody* of the Attorney General." § 4241(d) (emphasis added). Based on this language, there is a clear distinction between custody and hospitalization. Therefore, in this case the applicable commitment date was March 7, 2022, when she arrived at FMC Carswell.

Upon her arrival, Defendant was quarantined pursuant to COVID protocol for 14 days or until March 21, 2022. She was returned home on August 24, 2022,[1] for a total of five and a half months from the date of her hospitalization. But the Court's commitment order only authorized four months. Although the BOP requested more time, the Court did not enter an order authorizing additional time pursuant to § 4241(d)(2).

Although Defendant emphasizes her Motion is not based in the Speedy Trial Act, she directs the Court's attention to a recent Seventh Circuit opinion addressing a district court's dismissal without prejudice for violation of the Act, *United States v. Lloyd*, 50 F.4th 648, 651 (7th Cir. 2022). In *Lloyd*, there was an unreasonable delay in transportation to the defendant's pre-competency evaluation, which attributed to a speedy trial violation. *Lloyd* is instructive to the extent it addressed a statutory violation related to a competency evaluation and the remedy of dismissal without prejudice versus with prejudice.

In comparison, Ms. Bradley complains about the length of the exam itself but in context of IDRA rather than the Speedy Trial Act. Likely because the Act excludes time for such examinations whereas IDRA defines a reasonable in which one must occur. Defendant is correct

---

[1] At the August 23, 2022 status conference, the Parties indicated defendant had been released from FMC Carswell and had been in transit from the BOP for approximately five weeks. Because she was still in custody, the Court granted Defendant's motion for release from custody. The Parties' briefs do not distinguish between the end date of her actual hospitalization at FMC Carswell and transportation. Therefore, the Court assumes only for the purpose of resolving this Motion that her hospitalization within the meaning of § 4241(d) ended August 24, 2022.

the Court cannot take simply "mash" together different statutes, but courts often look to other statutes when conducting statutory interpretation. Notably, the Speedy Trial Act which protects due process, mandates a remedy for failing to meet the 70-day rule; dismissal. With respect to the transportation exception for examinations addressed in *Lloyd*, the Act also dictates a delay beyond 10 days is presumptively unreasonable and nonexcludable from the 70-day count. In *Lloyd*, the government rebutted the unreasonable delay transporting the defendant from his examination, citing the COVID-19 pandemic. The question committed to the discretion of the court became whether to dismis with or without prejudice. In *Lloyd*, the district court dismissed without prejudice after considering the explicit factors provided by the Act, "among others": (1) "the seriousness of the offense;" (2) "the facts and circumstances of the case which led to the dismissal;" and (3) "the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2).

In comparison to the above provisions, the IDRA does not mention any remedy for failing to meet the four-month timeline or extension thereof, let alone factors a court should consider. Simply put, if Congress intended the remedy of dismissal, it would have been included, like it is in the Speedy Trial Act. The IDRA similarly defines a reasonable period of time but does not indicate whether it is presumptive, which can be overcome as the Government attempts to do in their Response. The Government briefly argues Defendant's period of custody was reasonable in light of the continued effects of COVID-19 in various respects. While it is widely known there are still delays related to the pandemic, in transportation and staffing across industries, such reasons cannot justify the extended length of custody under the plain language of the IDRA. For the reasons discussed below, the Court can consider them in fashioning a remedy.

Further on the point of remedy, the Court agrees with Defendant's contention that the Government has cited cases addressing § 4247's pre-competency examinations rather than § 4241. However, it remains unclear why some of the rationale applied to those cases could not be applied to § 4241. Why wouldn't an individual who has not been deemed incompetent have a similar liberty interest to not be subjected to a lengthy examination period? Section 4241 grants a much shorter evaluation period and unlike § 4241, it caps the reasonable extension period and requires the examination to be conducted in a facility closest to the court, unless impracticable. In *White v. United States*, the Seventh Circuit stated, "there is no sanction for exceeding the time limits in § 4247(b), and we have declined to incorporate the time limits from that statute into the Speedy Trial Act, which sets no limit on the period that is excluded for competency or other mental evaluations." 273 F. App'x 559, 565 (7th Cir. 2008) (citing *United States v. Fuller*, 86 F.3d 105, 106-07 (7th Cir. 1996); *United States v. Scott*, 784 F.2d 787, 789-90 (7th Cir. 1986)). In recognizing that the defendant in *White* experienced delays during his competency and sanity examinations which exceeded statutory time limits, the Court cited to both §§ 4247(b) and 4241, as well as § 4242.

The court in *Fuller* remarked it would be foolish to assume that Congress would have wanted the violation of exceeding the 30-day pre-competency evaluation limit, to carry consequences under the Speedy Trial Act. *Fuller*, 86 F.3d at 105. Those consequences include dismissal. The court went on to note even the Act does not set a limit on pretrial commitments to determine competency and the time limit in the IDRA should not be imported to the Act. *Id*. If anything, the remedy suggested by these cases is release from detention, which has already occurred in Ms. Bradley's case. *See United States v. Brown*, 627 F. App'x 558, 560 (7th Cir. 2015) (noting if the defendant's detention for 161 days in custody to conduct a pre-competency

7

examination violated § 4247 because it lasted too long, then he should have been released) (citing 18 U.S.C. § 4247(g); *Fuller*, 86 F.3d at 106–07). But see, *United States v. Brennan*, 354 F. Supp. 3d 250, 265 (W.D.N.Y. 2019), cited by Defendant, which distinguished § 4247(b) from § 4241(d), by noting § 4247(g) only describes confirming illegality of detention pursuant to §§ 4243, 4246, or 4248 by writ of habeas corpus, with no mention of § 4241.

The Court also wonders whether Defendant's issue is actually with what occurred during the discharge process embodied in 18 U.S.C. § 4241(e), which neither Party addressed. In the BOP's March 7, 2022 letter here, it stated the evaluation would be completed by July 5, 2022, which corresponds with a 4-month review. However, the written report would not be available until up to four weeks following that date. It does not appear Defendant filed an objection to the timeframe at that point or the BOP's apparent belief that the 4-month period began March 7, 2022. Thereafter, it appears Defendant's evaluation was completed in early July but the Parties do not pinpoint when. Then, on July 27, 2022, the BOP indicated to the Court it needed until August 30, 2022, to complete the evaluation report. In spite of this, the Government, at some point, agreed to Defendant's return home prior to the report being submitted to the Court on August 30 and prior to the Court making a competency finding on September 28, 2022.

Section 4241(e) states,

> When the director of the facility in which a defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he *shall promptly file* a certificate to that effect with the clerk of the court that ordered the commitment. The clerk shall send a copy of the certificate to the defendant's counsel and to the attorney for the Government. The court *shall hold a hearing*, conducted pursuant to the provisions of section 4247(d), to determine the competency of the defendant. If, after the hearing, the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the court *shall order*

8

> *his immediate discharge* from the facility in which he is hospitalized and shall set the date for trial or other proceedings.

Based on the statute, the certification triggers the court hearing on competency and the court's finding of competency triggers the discharge from the hospitalization. For example, in *United States v. Jain*, 174 F.3d 892, 895 (7th Cir. 1999), the court noted the trial court followed the procedures in § 4241(e) wherein FMC Carswell notified the court the defendant was now competent, then the court held a hearing to make a new finding that the defendant was competent to stand trial and ordered her to be discharged from the mental hospital.

There seems to be a gap between the end of the § 4241(d) restoration period and § 4241(e) discharge process or authorization of additional time under § 4241(d)(2). And does transportation from the BOP qualify as part of the hospitalization? The hospitalization for treatment must be completed in four months, absent additional time granted. But can the facility continue to house the defendant while reporting is finalized if the BOP has made a competency finding? Arguably, no, based on a plain reading of the statute. Recall § 4241(d) states, the Attorney General "shall hospitalize the defendant for treatment in a suitable facility" for such a reasonable period of time, not to exceed four months. *See United States v. Magassouba*, 544 F.3d 387, 408 (2d Cir. 2008) (suggesting the entire four-month period should be dedicated to the Attorney General's assessment and not cut short by the district court to assess a § 4241(d)(2) extension but the Attorney General's authority to hospitalize the defendant ends at the four-month period if not extended). If the evaluation and reporting are subject to same four months, then once the evaluation is complete and if competency is the finding, additional hospitalization time cannot be requested simply to finalize the report. No more time is technically needed to restore competency, which is the only specific authorization for more time under § 4241(d). Unless the reporting period qualified as "additional time to restore competency" because it is

necessary to issue the certification to the court. If § 4241(e) authorized additional time, the certificate must be "promptly" filed, therefore it would at least be subject to a reasonableness standard.

If it is Defendant's position that any day beyond four months in the BOP violates due process because Defendant was not subject to detention under the Bail Reform Act, then the evaluation and release are strictly subject to the four-month rule. Therefore, the BOP either needed to release her from custody by July 7 or certify to the Court before the four-month deadline that she was competent, with enough time for the Court to also order her release from hospitalization pursuant to § 4241(e). Or as in this case, the release could be achieved by agreement of the parties. The Court doubts strict adherence to four months is feasible in all cases, such as where there is an objection to the competency finding or if it includes transportation as well, especially considering the BOP may not be able to restore competency or fully and carefully evaluate it until the end of the four-month period. "No one's interests—not the parties', not the court's, and not the public's—are well served by encouraging undue haste in § 4241(d)(1) evaluations." *Magassouba*, 544 F.3d at 408 (citing *United States v. Ferro*, 321 F.3d 756, 762 (8th Cir. 2003) (noting it is a serious decision whether to defer trial indefinitely).

Nonetheless, assuming the competency evaluation and discharge should have occurred by July 7, 2022, or even shortly thereafter, the statute is clear in that the hospitalization requires completion "not to exceed four months" unless certain findings are made. Ms. Bradley was in custody until August 24, 2022. Therefore, the Government statutorily violated § 4241(d) and arguably in violation of Ms. Bradley's due process rights. This is so, especially in light of the fact that Ms. Bradley was not in pre-trial custody and had been released with conditions.

The next question is the remedy for such violation. Defendant advocates against a balancing test but the Court sees no reason why one would not be appropriate. Moreover, Defendant argues for such a stark remedy of dismissal with prejudice without concrete support for it. Defendant also dissuades the Court from applying any particular factors like those articulated in the Speedy Trial, thus, the Court is left with its inherent discretion. *See United States v. Taylor*, 487 U.S. 326, 343 (1988) ("Ordinarily, a trial court is endowed with great discretion to make decisions concerning trial schedules and to respond to abuse and delay where appropriate[,]" unless that exercise of discretion is defined more narrowly by statute.); *United States v. Killingsworth*, 507 F.3d 1087, 1090 (7th Cir. 2007) (noting a district court's discretion to dismiss with or without prejudice under the Speedy Trial Act is more narrow because it requires the court to consider explicit factors).

For these reasons, the Court looks to the totality of the circumstances. In light of the letter received by the Parties, dated July 27, 2022, requesting an extension of four weeks to August 30, 2022, to complete Ms. Bradley's report, the reason for the extension, the minor additional time she was in custody beyond the authorized period and the lack of any articulated prejudice to her defense caused by the delay, and in light of the United States' good faith efforts to have Ms. Bradley's evaluation be done in a timely fashion and the fact that she has been released, the Court believes dismissal with prejudice to be too harsh of a sanction. Similar to the court's words in *White*, 273 F. App'x at 565, there is no sanction for exceeding the time limits in § 4241(d), and the Court declines to incorporate the remedy from the Speedy Trial Act into the IDRA. The Court has limited options available and alternative options have not been proposed. The Court believes that Ms. Bradley's term of custody in the BOP is available to the Court to factor at a later point, if warranted. For now, the Motion to dismiss is respectfully denied.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 33) to Dismiss Indictment is DENIED.

Signed on this 31st day of October, 2022.

s/James E. Shadid
James E. Shadid
United States District Judge
